May everyone be seated. Mr. Corzine, we'd be happy to hear you introduce your student counsel. Thank you, Your Honor. May it please the Court, John Corzine with the Wake Forest Law School Appellate Clinic. And it's my pleasure, under Local Rule 46A, to introduce the two law students who are here to argue to the Court. First, Madeleine Strom, who will address the felony disclosure issues. And then Peyton Mitchell, who will discuss the publication of a candidate's address issues, starting with standing. Also with us is Mr. Clay Shupak, who worked on the reply brief with us. And thank you, Your Honors, very much. Thank you. I want to say for the Court that we're always very happy to have student counsel, and sometimes the arguments of student counsel are oftentimes quite superb. So we're very happy to hear from you, Ms. Strom. Thank you, Your Honor. May it please the Court. Can you put that microphone there? May it please the Court. The first question before the Court today is whether North Carolina's requirement that candidates for the U.S. House of Representatives publicly disclose their felony history is an unconstitutional qualification. The Qualifications Clause of Article I, Section 2, establishes a fixed and exclusive list of three qualifications for membership for the U.S. House, 25 years old, seven years a citizen, and a resident of the state. Mr. Sharma met all three qualifications. The Founders divested the Congress and the states of any power to add additional qualifications. The Supreme Court provides that a statute imposes an unconstitutional qualification if it has a likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly. Is there any indication that this gentleman could not run for office? Your Honor, our candidate was initially not going to appear on the ballot in the primary election. However, he was ultimately able to appear on the ballot and subsequently lost. However... Can we regard something as a qualification if it doesn't disqualify anybody? Yes, Your Honor. So pointing to the second part... Is that just preliminarily something of a contradiction in terms? So Your Honor, it is not a contradiction because the test outlined by the Supreme Court is that a qualification can have the sole purpose of creating additional qualifications indirectly. It does not have to be something that directly keeps the candidate off of the ballot if it possibly limits the scope of candidates that are able to appear on the ballot. Our client was ultimately able to appear on the ballot. However, as a class, felons in North Carolina... Felons can appear on the ballot, but is there any notification on the ballot at all that he was at some point a convicted felon? That's not on the ballot, is it? No, Your Honor. It is not. It doesn't appear on the ballot itself. However, the statute, which is North Carolina General Statute 163-106-E, does require that the notice of candidacy ask a question about felony status and that the candidate... It would be a significantly stronger case if the felony designation were on the ballot. Yes, Your Honor. And it's not, and there's no disqualification for running for office. And the question, I guess, is what kind of a political disadvantage do you put someone in because the political disadvantage cases, I think it's Eric Cook decision, actually communicated something about the candidate's views. And the voter goes in the voting booth and says the name, and there's no indication of felony status, and there's no indication on the ballot as to what this candidate believes or disbelieves. So I'm not sure how this... If this is a disqualification or an added qualification, it seems to me that a great many state laws that required some kind of preliminary information would then be viewed by courts as disqualifications. And if we go that route, what do we leave of the state's Article I authority to regulate the time, place, and manner of elections? This is one of the concerns that I have, is that we are nibbling and in some kind of, and in some real way, gnawing away at the state's authority in our federal system to regulate the time, place, and manner. And if this is... I don't understand the limiting principle here because if we say this is impermissible, it seems to me that we've gone a long way to compromising the state's Article I power. So, Your Honor, there is a clear difference between what the state can do under their Article I elections power and what they cannot do in adding additional qualifications. And I think that the key difference here is that requiring a past felon to disclose the fact that they are a felon in order to appear on the ballot is substantive. It has nothing to do with regulating the time, place, or manner of elections as the state frames their argument in terms of this being a ballot elections clause regulation. So can you help me a little bit? So one of the oddities here, right, is that when you look at the statute and you look at the form and you look at the regulation, the state has actually added a lot of qualifications, right? You can't be a felon. You must be a registered voter. Those seem obviously to be qualifications, and I take the state to concede that those are improper qualifications that no longer apply, at least in Congress, although I don't know how your client was to know that before you filed suit. But those do look fundamentally different from a disclosure requirement, right? And so what I'm having a little trouble, like, getting is where you would have us draw that line, right? So there's obviously some, you know, affiliation with a political party, right, that the Supreme Court has said that that's permissible, but how do I draw the line where this mere disclosure of information, like a financial disclosure, would be the same thing? It seems like to me a financial disclosure would probably pass muster, right? This is a felony disclosure. Help me understand why I should think about those like being a registered voter or otherwise. So, Your Honor, requiring someone to make a financial disclosure or affiliate with a party is different from the felony disclosure because they serve purposes under the Elections Clause. They help states to regulate the time, place, and manner. Financial disclosure, what does that, what's the purpose served there, right? It's informing voters, right?  Okay, and so what's a felony disclosure requirement doing? It's informing voters. In a way, it is informing voters. However, it doesn't fall under the reasons why the state would be able to use their power under the Elections Clause. The state is, in essence, asking candidates to disclose their felony history and have voters focus on that as a way to look at their commitment to the rule of law. A financial disclosure or affiliating with a party does not, it serves a purpose beyond just disclosing the felony in order to inform the electorate. What if the state said instead, we want you to check a box, are you pro-life or not? Is there a problem there? I mean, do you think that's a qualification? I think so because I think that ultimately it isn't the role of the state to help people understand the views or point to a particular view for a candidate. I think that it's just to facilitate elections under the Elections Clause. How can a disclosure requirement, here a relatively innocuous one that's not a part of the ballot or whatever, how can that not be a part of a manner of regulating elections? Why doesn't this kind of thing fall within the ambit of a state's Article I power? And the state's Article I power to regulate the time, place, and manner of elections is every little part of it is under some sort of assault. And this seems to me a relatively innocuous kind of thing because it isn't even disclosed to the public except the fact that it's on file. It's already a matter of public record. But it just, when we get down to this minute question, haven't we immersed ourselves quite deeply in the minutiae, in every minutiae of the state's attempts to regulate the manner of elections? And they are given some constitutional authority to do that. And it would be a very different case for me if this were disclosed on the ballot. It would be a very different case if particular viewpoints or, you know, disclosure of, well, what are your views on this issue? What are your views on that issue? And that was part of the application form and everything. But this seems relatively modest. And if this itself is in some way unconstitutional, my gosh, we've driven a nail into the grant of authority given the states to have something to do with regulating elections. There's some leeway in that grant. Your Honor, I agree that the state does have power to regulate under the Elections Clause. However, when you look at it, the reason why the state has the power to regulate under the Elections Clause is to ensure that the candidates that appear on the ballot meet the qualifications. And... But this gets down to a very granular level. I mean, I just wonder how much this granular picking at this particular provision and that particular provision doesn't end up essentially in its totality, putting a significant dent in the power, the residual power that the framers gave the states under Article I. Well, Your Honor, I think that the power that the framers gave to the states under Article I is to help ensure that people are informed about the electoral process from the state's perspective, to be transparent and to ensure that elections are efficient. And I just don't see the connection between requiring a candidate to publicly disclose their felony history and those goals under the Elections Clause of the Constitution. So I think that there lies the problem. Even if it's not directly on the ballot, it's still labeling candidates. And the state seeks to serve the purpose of indicating to voters a candidate's commitment to the rule of law. And ultimately, I don't think that that's a role for the state. The state should be able to regulate elections under the Elections Clause, but I just don't see how this fits into that box. Can I ask an unrelated question, perhaps? I'm happy for you to leave this to Ms. Mitchell, if that's her story. Why is the felony disclosure piece not moot? I understand there's sort of a reference to capable of evading review, but that requires some reasonable expectation that your client will be confronted with this problem again. And where on the record would I find any indication that your client is going to run for office again, right? We have to have some reason to think that he's going to do this again and not, I don't actually doubt that he will, but where would I look to to cite that? Yes, Your Honor. So the state actually conceded that this case is not moot. Obviously, the court could on its own... That didn't really matter to me, right? Yes. However, there is indication on, let me see what page, on page three of our opening brief, Mr. Sharma did express that he may well run again. So... May well run again? Yes. Is that under the capable of evading review line of cases, is that sufficient to have like a reasonable expectation? I think it's the language we use or the Supreme Court has used. May well do it, right? In Lujan, if somebody said, I may well travel, I don't think the court would have said that suffice there. Why do we think that suffices here? So, Your Honor, I think the other piece of it is the fact that if he were to run again and he were to fail to disclose accurately his felony history, he would be subject to a felony under North Carolina law. Totally fair, but there's like a may well, right? If he runs again, you're totally right. And if we had some reason to think that he was going to run again, like I'm, I'm totally on board, right? This, this makes total sense. But I, I worry a little bit that, you know, no offense to you, but a statement of the lawyer that he may well run again is not exactly like confidence inspiring about the expectation I have that he will actually do so. Yes, Your Honor. I definitely hear you. I point you to our brief at page three, but I understand. So the, is an interesting kind of question because it's, in applying the capable of repetition, yet evading review, there's some courts that take the position, well, it has to be with the particular individual who will repeat the behavior. And other states say, other circuits say, no, we don't require that the individual repeat. We simply require that the issue reemerge. But what's interesting about this case is that you have both the expectation that the issue will reemerge and the expectation that the individual will do it again. Because as I understand it, in the 2022 Republican primary for a congressional seat, this same individual challenged this requirement. And so, you know, you have here, the individual is not only likely to do so, he has already done so. And that's sort of icing on the cake. And when the courts have looked at this capable of repetition thing, they say it has its highest salience in the electoral context. We have our court saying that. We have the Supreme Court saying that. And the word capable is interesting to me. It has to be capable of repetition. Well, here, you know, the word capable requires some sort of projection. Here, we can project because we have the past conduct to refer to. And so I gather you're saying to us, you know, if this exception to mootness doesn't apply, it's hard to imagine one that ever would. Yes, Your Honor. And we definitely agree with that view, especially in light of, I believe it was your opinion in the North Carolina Right to Life Community Fund. You talked about this exact distinction. It could be capable of repetition. And also, we know from his past actions that he has run in multiple elections. So, yes, Your Honor. We would agree with that. At some point, I was thinking about this. At some point, I just can't keep kicking your can down the road. At some point, North Carolina needs some answers to some of these questions. You know, it must be a very difficult job to be on the state board of elections in North Carolina. I can tell you that we have received more litigation, election litigation, and I suppose it's a product of divided government. But we have received more litigation, suit after suit after suit, attacking North Carolina's election laws. And if you would add them all up, you would very likely find that it is without precedent. And at some point, the state board of elections needs some answers, not having the whole thing totally in limbo. And I don't fault anyone that brings these suits. I mean, they have a perfect right to do so and the rest. But I just think I've never seen anything quite like it, the degree to which the election laws of North Carolina are being challenged. I don't know, if somebody asks somebody, do they want to serve on the state board of elections, are they kidding? You have to think of it from that perspective. I just want to thank you. Thank you, your honor. And I just wanted to briefly conclude and say that we would ask you to reverse the decision of the district court. Thank you very much. Ms. Mitchell, we're happy to hear from you. One thing I'm curious about is that there is a federal overlay to election procedures. But most of that overlay is generated from the Equal Protection Clause and the Voting Rights Act. And the conflict takes its sort of most obvious form when there's a racial dimension to the lawsuit. I don't see that here, except maybe very indirectly. But where we're talking about something that doesn't involve an Equal Protection or Voting Rights Act challenge, doesn't the state have a greater degree of leeway than it would if there's a VRA or Equal Protection challenge brought? Doesn't the Article I power begin to expand a little bit when there's no federal racial overlay? Yes, your honor. And may it please the court, if I understand your question correctly, I would agree that whenever there's not an Equal Protection or racial overlay pertaining to a state's elections regulation, they may have more leeway. I would agree with you. But that leeway isn't limitless. And the state still is required to justify the regulations that they put down whenever it arguably steps outside of the authority that they have under the Elections Clause. Can you speak up for me, please? Yes, your honor. So to answer your question, yes, sir. I would agree with that. However, that does not excuse the state from being required to justify the regulations that they choose to impose. So today I will discuss Mr. Sharma's challenge to North Carolina General Statute 1638210C1, which mandates the public disclosure of political candidate addresses. Now the district... Sorry, it mandates the disclosure of voters addresses. Your honor, by the text of the statute, it does say voters addresses. However, political candidates having to be registered voters are swept into that group. Below, he challenged the requirement that candidates be registered voters, but he's not challenging that on appeal, right? That's correct, your honor. Okay. So... Just checking. Yes, your honor. So the district court... Why is he not challenging that? Because everybody agrees that that's an improper qualification? Your honor, why he chose not to challenge that on appeal... Do you agree that being a registered voter is an improper qualification under the constitution? Your honor, I would agree that that does impose an additional qualification. Right. So if the state of North Carolina said, as it happens to say, that you have to be a registered voter in order to run for Congress, that's an unconstitutional, at least application of that statute, in your view? Yes, your honor. So I need to understand exactly what you're challenging here with respect to the addresses. And that is that the voters have to give the address, right? Your honor, yes, that is part of the statute that we are challenging. That's the part of it that you're challenging, the fact that the voters have to list their address? Not exactly, your honor. This challenge really stems from the harm he suffered as a candidate. However, that is captured underneath the statute, which by its text does refer to voters. But we agree he doesn't have to be a registered voter to be a congressional candidate. No, your honor. He doesn't need to be a registered voter. Well, in North Carolina, he does have to be... Not for congressional candidates, right? Because we've just established that, like, that's not constitutional. I get that they claim that they say that, but I'm going to ask him when he gets here. But I'm fairly confident that that is an unconstitutional qualification. So the challenge with that, right, is that he doesn't have to be a registered voter. So that, like, has a sort of breaks your chain argument, right? That because I have to be registered, I there have to disclose my address? Yes, your honor. However, I would say that that does not break the chain, because in order to place his name on the ballot as a candidate in North Carolina, he does have to publicly disclose his address on the candidacy form. But I'm still not clear, and this is my fault, not yours. Is the challenge brought on behalf of this particular plaintiff that he has to give his address, or is the challenge to the law that all voters would have to give their address? Which one is it? He challenges facially that he was compelled to place his address on the candidacy form. Okay, that he was required. Well, he brings a facial challenge saying that as this would be applied to anyone here. But is he also challenging on behalf of voters who have not been convicted of a prior felony? Is he challenging that on behalf of every voter? Yes, your honor. So he is bringing this challenge separate from his felony disclosure claim. And whenever he... I know it's separate from the felony disclosure claim, but I'm wondering whether he's only attacking the address requirement in the sense that it has applied to him, or whether he's leveling a larger facial attack and saying this is wrong to require every voter to give their address. Which is it? Your honor, it's the second one. He is bringing a facial... That every voter is required. I thought in his complaint, the First Amendment part is it chills the First Amendment right to seek federal office for the U.S. House of Representatives. I didn't see a challenge to the First Amendment rights of all voters. I know in the remedy, he said, don't make anybody disclose their address. But the chilling, the First Amendment argument in the complaint, at least, and we have to construe it liberally. To me, it seemed entirely linked to his ability to run for office. He say it's chilling people from running for office. How am I wrong about that? Your honor, you're not wrong that that complaint does state that claim in that way. However, his intent in construing that complaint liberally, his intent is to bring a facial challenge against the address disclosure statute. And in fact, the state did concede that this is a facially over... But that's like a different challenge, isn't it? What's the First Amendment argument that it violates the rights of all voters in North Carolina? Like that's a, there's an argument there, it may be to be made, but it's not the argument that's in this complaint. Right. Your honor, Mr. Sharma's argument is that as it applies to any voter in North Carolina and any political candidate, the North Carolina statute at issue here compels speech when he would otherwise remain silent speech that then chills his ability to exercise his First Amendment right to avail himself of the ballot, which is a cognizable injury under Article 3, which is why... But it didn't chill him right though, he ran for office. The fact that he did overcome the chill and ran for office, but the fact that he ultimately made it past that experience and placed his name as a candidate does not negate the objectively reasonable chill that he did suffer whenever he was made to compel that speech. But if, and I guess we'll find out if the state will, would compel him to reveal his address again in the future, but if he, if they won't, there's like no likelihood this would happen again, right? If the state removed the requirement that Mr. Sharma or any candidate place their address on the candidacy form and, and publicize it on the internet, then, then no, your honor, that would solve... That's separate from the right requirement that voters addresses go on the internet. There's a law in North Carolina, if you're a voter, registered voter, your home address is on the internet. But if the state says, we're not going to require candidates to put their home address on the internet if they're not registered voters, right? Because there's the, there's a break in the chain. If you no longer have to be a registered voter to run for office, then his problem is solved, right? Yes, your honor. Ultimately, Mr. Sharma would suggest that the state of North Carolina could remove that requirement altogether and also remove the addresses that are already uploaded on those websites. But I would agree with you. Can I make, I think maybe I was confused. So there seemed to, there seemed to be two things going on and I'm maybe not understanding which you're challenging. I understood you to be challenging, you know, 82.10C, which requires the County Board of Elections to make all voter registration information public, right? And that, I understand that argument. You seem to also be arguing here that there's a separate violation because when he filled out the form, that that required him to put his address on the form, the candidacy form, right? Which would be unrelated to 82.10C. That is correct, your honor, that that is a step that's a- Okay. And so what I'm trying to figure out is what, what's the statute that requires that? And where do I see anything about that before today? I mean, when I, when I look at the brief, right? Like it's, the brief is all about this 82.10C. The district court is about 82.10C. I understand there might be another statute that requires like a candidate to disclose his address, but that's like a separate challenge. Where do I see this, you know, candidacy form challenge as opposed to what appears to have been the primary argument, at least, if not the only argument about 82.10C? So your honor, 82.10C does require the publication of voter registration information, but captured within that category of voter registration information will be the addresses of candidates. Okay, but that's separate from the form, right? That's going to be true whether the form requires an address or not, right? So the form says like put your name and then it could either say address or not, right? But that's the form, right? The voter piece is totally separate. Imagine for a minute that the voter piece didn't exist. Are you making a separate argument that when he filled the form out, he had to put his address down and that that is the violation? Yes, your honor. Okay, and where do I find that in the complaint, the district court hearing, or your brief on appeal? Your honor, Mr. Sharma alleged that first amendment violation as stemming from his requirement of placing his name on the candidacy form on joint appendix, page 47, lines 16 to 17 and 48, 12 to 13. These are where he originally set out those, that first amendment argument as it comes to him as a candidate. Does the candidate, I'm sorry. I'm also surprised to hear this candidacy form argument. And I'm wondering if the law in North Carolina requires the candidacy form address information to be placed on the internet, right? The statute that you argue about in your brief actually requires that it be on the internet available in a digital format. Is that the same for the candidacy form address? Yes, your honor. Where is that in the law so I can look it up? It's captured under that same statute. It all goes back to the fact that you're a voter. Yes, your honor. So there's not an independent requirement that candidates addresses whether or not they're a registered voter go on the internet in North Carolina. Well, your honor, as a candidate, you are required to fill out this separate form. And so while I can't direct you to a specific statute referring to candidates, that form is the vehicle by which it goes through the voter registration statute. Yes, your honor. So when I look, I just want to make sure I understand. So I looked at 47 and 48. I understand that's where he says this is a First Amendment violation. But everything else I read, but doesn't say anything about the form, the candidacy form, as opposed to the voter disclosure law, right? And so everything I've seen is about the voter registration law, which indirectly discloses his address. I totally get that, right? But today we've got a separate argument that like when he filled out the form that required him to check, I'm a felon and whatever it is, that was the constitutional violation. And what I'm trying to find is where in the record or in your brief, that argument was raised by your client. Your honor, in our reply brief on appeal, we do argue that the compelled disclosure on the candidacy form is where the injury stems from, which is the chill on his First Amendment rights. And we argue that that is what puts this act vulnerable to an exacting scrutiny review. In the lower record, the joint appendix on page 261 is where you'll see the form itself attached. And that is where next to the address disclosure requirement, you can see the state has placed a message there saying this information will be made public. Oh, I totally understand. You could make the argument, right? But the challenge I've got is, and I'll look back at the reply brief. I'm not sure the reply brief would help you. It's got to be raised in the opening brief. But I understood all of your argument, last time and I'll stop. I understood your argument to be about 8210C. And then here, it's about a form, which is not part of 8210C, is not required by 8210C. Nothing about 8210C, to me, governs the form. You could make a form argument. But is there anywhere other than your reply brief that I should look to see that argument having been made before today? Your honor, it is brought up in our initial brief on appeal. I don't have... Where should I... Okay, maybe on reply, you can just point me to where you want me to look. I just want to see if this is an argument that's preserved. I understand it could be an argument. I'm not sure it's a winning argument, but it could be an argument. But I didn't understand this to be an argument before today. And I want to make sure if it was properly presented that I can consider it. Yes, your honor. Thank you. I have the same question in terms of whether what I'm hearing today lines up with what I thought this particular challenge was about. I thought it was a challenge on behalf of all voters, in which the plaintiff was one. That there was a chilling effect in requiring for registration that voters list their addresses. And that that was what produced the chilling effect. And that was what I understood. And the chilling effect would presumably fall on all voters, of which the particular candidate in our case was one. That's what I understood the argument to be. That because he was part of this class of voters, and he was required along with other voters to list his address, that that produced an impermissible chilling effect. Yes, your honor. And that is a way to look at this argument. And perhaps that's how it is articulated more clearly in our brief. But that's how I understood the argument was framed for me. That there was a chilling effect on him, because he was a part of a larger class of voters who were required to give their addresses. Yes, your honor. And that is true. And he is also part of the group of candidates that, by that same statute, is compelled to place his address on the form. Thank you. Thank you, your honors. Mr. Bride, we'd be pleased to hear from you. Good morning, your honors. And may it please the court. My name is Nick Broad. I'm in the North Carolina Department of Justice. Can you pull your mic up? Sure. Is this better? Yeah, that's much better. My name is Nick Broad. I'm in the North Carolina Department of Justice, appearing on behalf of the defendants. On this last point, I think I might be able to clarify. I had also understood, as your honors had suggested, Mr. Sharma to be challenging the disclosure of his address as a voter, not a challenge to the form, Judge Richardson, as you had mentioned. I understood all of the arguments in the opening brief to center around this constitutional challenge to 8210C, which makes voter addresses publicly available information. And the allegation that Mr. Sharma has made in his complaint, as I understand it, is that that chills his ability to speak as a candidate because he's afraid that the public availability of his address might make it more likely that he is threatened or harassed as a candidate. I had never understood the challenge until this morning to be to the form. I had just understood it to be the statute. Do you agree that North Carolina's requirement that you be a registered voter to run for Congress is unconstitutional? Yes. And it would not be applied against a congressional candidate? Yes. And I presume North Carolina either has or will, in revising its forms and information, make clear to future candidates. I mean, one of the things that's bothersome here, right, is this plaintiff could be a very smart person, could read the statute, could read your forms, and believe that he was prohibited from running for Congress when I think we now all recognize that that would not be true. Yes, I completely agree with that. We conceded this below in the district court. This is a JA-127 footnote 4. We have conceded this in prior litigation with Mr. Sharma dating back to 2022. And we have since updated our notice of candidacy form with respect to the felon disclosure provision to try to prevent these kinds of confusions. I know the felony disclosure provision, but the registered voter provision doesn't seem, the concessions and amendments don't seem quite as clear? I don't dispute that. And I think these kinds of government forms can always be better and we're always trying to improve them. And we've tried to improve them in one respect. And perhaps the conversation this morning will allow us to improve them in another. It's a very wise concession on your part because it makes the felony disclosure requirement a great deal easier to sustain. And without that concession, then it begins to seem more and more like an additional qualification. But with the concession, it becomes to seem less and less of an additional qualification. And that's why when I read the concession, I said, that's a very wise concession to make. Well, Your Honor, I mean, just to underscore the importance of the concession, I mean, I think that the best piece of evidence that I have on this is that Mr. Sharma himself appeared on the ballot in March of this year. So I think this is not the kind of case as was the case in Thornton, where you have a candidate who is completely barred from appearing on the ballot. I think the only route for Mr. Sharma to prevail here on the qualifications clause issue is a Cook-style argument that even though he was allowed to appear on the ballot, that nonetheless, this disclosure rule had the indirect effect of imposing a qualification. Speaking of the March primary, which is now over, can you give me North Carolina's view on this capable of evading review idea and why I understand the 22 litigation and maybe that gets us part of the way there, but the plaintiff here has merely alleged, even if we take the briefing as a sort of allegation, that he may well do something in the future. How do we get to a reasonable expectation here? Well, so I suppose I don't want to fight you too hard on this. I know, but you're appearing as an officer of the court, and so I'm asking for North Carolina's view. I framed it that way particularly. Well, so I would point the court to the Fourth Circuit's decision in Leek, which we cite at footnote two of our brief. And my understanding of Leek is similar to what Judge Wilkinson was discussing earlier, which is that it allows for a finding of capable of repetition yet evading review if there is sufficient indication in the record that a candidate may well run again in the future. And it seems to me in light of Mr. Sharma's prior litigation against us in 2022 and this concededly somewhat vague statement in the brief that he does intend to run again. Normally these capable of repetition cases don't come to us where we already have evidence of the repetition. That's right, Your Honor. And I think the prior litigation that Mr. Sharma was involved in against the State Board in 2022 is again combined with the statement in his brief sufficient from our perspective to allow the case not to be moot. And again, I would point the court to the court's earlier decision in Leek as supporting that proposition. I'm happy to answer any other questions about mootness, Judge Richardson, if you have them. But I do want to get back to Cook because I think this case is quite different from Cook in several important respects. So Judge Wilkinson, as you were discussing with my colleague a little bit earlier, I think the most important difference between this case and Cook is that this case does not involve any kind of disclosure on the ballot itself. And as I read Cook, that was the most important thing that the court was concerned about. The court was really concerned about the state coming in at sort of the 11th hour and interfering with voters' independent decisions about which candidate they might want to select. And that's not happening here. This is an entirely off-ballot disclosure. Can you tell me why you think that is? Is the ultimate question, the sort of intent of the law and placing it on the ballot is just really good evidence of intent? Is that the sort of move that you're making? That's how I read the court's decision in Cook is that it's mostly asking sort of purposes and effects questions. And when you have the disclosure on the ballot itself, it just supports a really strong inference that the underlying purpose of the state was to try to interfere between the link, between the people and the national government, which is sort of what the- Green, I'm sorry, I didn't hear. What? Between the people and the national government. The people have a right to elect representatives to Congress without interference from the states. And I think that's sort of the central insight of Thornton and of Cook. And I think when you have an on-ballot disclosure, the court in Cook was clear that the inference of interference there or some sort of intentional desire to prevent certain types of candidates from appearing in Congress was particularly strong. I think the inference was even stronger in Cook because the state there had singled out one particular political issue. It seemed that this disclosure requirement seems of a relatively innocuous nature because it doesn't involve anybody's beliefs. It doesn't involve anybody's views. It's simply a factual matter, which probably is already a matter of public record if someone seeks to inquire. It doesn't involve any ballot reference to his felony status. I think that would plainly be out of bounds. And I was thinking, you know, I don't know that I would have been in favor of this requirement, but that's a totally different question from whether the state is acting within its constitutional authority to act as it did. And to me, the strongest argument that the state can put forward here, and it pertains to both the additional qualification statute and the First Amendment Anderson issue. If the state has an overarching interest or can at least assert an overarching interest, which a federal court would be reluctant to strike down, is it wants to simply emphasize in an ever so modest way that it's not a good idea or it's a good idea to note that we don't want someone who aspires to be a lawmaker to have been a lawbreaker. Now, that doesn't seem to me unconstitutionally illegitimate to recognize that there is a difference between lawmaking and lawbreaking. And you don't want, you want at least to draw attention to the fact or to underscore in some very modest way that it is an odd sort of thing for someone who has broken the law flagrantly to then seek to become a lawmaker. There's a contradiction in there. And to say that North Carolina is constitutionally disabled from even noting that fact or from having the fact noted seemed to me a real incursion on the Article I authority, which still must mean something because the way this thing is, the way the tides are flowing now is that we're whittling down the Article I power step by step by step and maximizing federal oversight and interference and everything with the state's traditional authority. And as I mentioned earlier, in North Carolina, there's an epidemic of this stuff. I can't even imagine how large the elections component of the attorney general, of the attorney general's office is. Because if you're not defending one thing, it's another. Or if you're not, in some cases, you're on both sides of it. And it's got to be, it simply exceeds things, anything I've ever seen. Well, is that a correct assessment? No. Well, Your Honor, I guess I'll underscore a couple of things about what you said that I completely agree with. So one is, I do think it's very important that this is purely factual information that is already publicly available. And I think one way of looking at the notion- Say it's purely factual, but Judge Wilkinson just suggested it's like viewpoint driven, right? That like, I mean, as Judge Wilkinson tells it, someone who's been convicted by a court of breaking the law is somehow not in a position to make law. I'm not ascribing to that view. I'm just saying that that like, seems like that's a viewpoint political issue. Like not totally different from like, let's take a random example, term limits. Your Honor, I think it's different because this is just a disclosure. It's a disclosure that- I understand where it shows up, right? But the point I think that was being made was not about whether it's on the ballot or not. I totally understand that argument, right? Your response is, oh, this is just purely a factual matter. Well, so too, is it purely a factual matter that I oppose term limits or I approve term limits, right? Whichever the case might be. I mean, at some level, that's a factual matter, but it's a viewpoint, right? I mean, that's like not a viewpoint neutral idea, it seems like to me. I do think this is a viewpoint neutral kind of a thing. I don't think that this ties any particular candidate to one stance on a specific issue. It's just a piece of historical, factual information that is employment related. I mean, this is one way of looking at this form. Is this- Why do you think it's relevant for a candidate? Well, I think it's relevant because this is something like a job application. And I think we've all had the experience of filling out a job application and disclosing criminal history. And this is a particular type of job. Why is criminal history relevant for a politician? I mean, I don't know how far you want to go down this road. I'm just saying those are not unloaded questions, right? This is not like your measurables at the combine, right? This is your age, weight, and 40 time, right? These are issues that implicate, it strikes me, like particularly sensitive viewpoints and positions. So, Your Honor, I'm not sure that I agree that the mere disclosure of a prior felony implicates any kind of political viewpoint one way or the other. And I think by requiring only a disclosure, the law in this area is allowing voters to take that information and do with it what they will. The state is not coming in and trying to put a thumb on the scale or tie the existence of a prior felony to a specific issue like are you pro-life? So, do you think if they put it on the ballot, that it'd be okay? I mean, I'm trying to figure out whether this matters to you, right? So, I understand your first line is it's not on the ballot, so it doesn't matter. But you seem to be making a second argument that this is just a factual question. If you're talking about that, it strikes me that you think it matters. It doesn't strike me that it's like any more purely factual than the question of whether I'm pro-life or not or whether I support term limits or not or whether I believe in a vibrant Second Amendment or not. Those are all factual questions at some level of what my beliefs are or where I went. All of these are sort of questions that are factual in nature, but they implicate, it strikes me, as particularly strong political viewpoint questions. Your Honor, I mean, it may be a question of degree here. I think if we're talking about specific issues, whether you're pro-Second Amendment or pro-life, I mean, that, to me, seems very directly relevant to a particular political viewpoint, a particular political topic in a way that just isn't at issue here. There's nothing... This idea of being a convicted felon is totally irrelevant in this election cycle? It just hadn't come up? No, I mean, I think I'm looking at it from the perspective of the candidate. I mean, whether you check that box, yes or no, doesn't tell you anything or require you to disclose anything about your particular political views in the same way as a box saying, you know, I am pro-life or whatever else might. And I do think this is a question of degree. I don't think that a felony disclosure rule of this kind necessarily implicates political views, a particular candidate's viewpoint on a subject matter, as was the case in Cook, as you might imagine with various hypotheticals. And I will go back just to underscore my earlier point about how I do think this is something like a job application. And I very much take the point, Judge Wilkinson, that this is a specific kind of job. You are being hired by the voters to make law. And as a result, I think it is reasonable for the voters who are the employers in this situation to ask about prior law breaking. And as I said, the voters can do with that information what they will. There's no effort in this case, as there was in Cook, to kind of put the thumb on the scale to benefit one type of candidate or another based on their political viewpoint or the way that they're seeing a particularly contentious political issue. I just, if something in some remote way may conceivably be viewpoint, I can't, I don't think this is viewpoint discrimination. But no matter what it is, you're still, in every First Amendment case, have to take cognizance of the state's interests. It's not an area that is, when you say, I agree with you, when you say it's a matter of degree, another way to put that is, and it's, I think, plays off your point here, that it is not a matter that is free from balancing. And part of the balance here is the state's historic Article I authority to regulate the manner of elections. And another part of the balance here is that a state is constitutionally able to differentiate between lawbreaking and lawmaking, and that it's important to recognize the difference. And so we can say, well, what does this disclosure do? Or what does it doesn't do? What it does do is relatively innocuous, because it's not on the ballot. It's not, you know, they're not blaring at it with sirens. It's not disqualifying in any way. And you have to balance the relative innocuousness of it against the weight of the state's interests. And the state's interest is the derivative of two things. Number one, the constitutional grant of authority in Article I. And then, in addition, the general authority, which would be independent of Article I, to differentiate between the function of lawbreaking and lawmaking. And if you expect citizens to obey the law, and if there's any sanctity at all to the rule of law, one would apparently seek to recognize a distinction between breaking law and conforming and abiding by law. And that goes right to the heart, not just of Article I, it goes to the heart of what law is all about. I completely agree with that, Your Honor. I completely agree. Unless the court has any further questions, I'm happy to stand on our briefs. Thank you. Okay. All right. Thank you, sir. Ms. Mitchell, I don't know, we'd be pleased to hear from you on rebuttal. Thank you, Your Honor. May it please the court. Before I get back to Judge Richardson's question about my issue, I'd like to briefly address a couple of things on the qualifications clause argument. First, the state has conceded that the felony requirement on that form is unconstitutional, but the statute on Addendum 11 of the state's brief has not been changed. And so while the form may have been changed, the statute remains the same today. And secondly, when it comes to the issue of mootness, Judge Wilkinson, you're correct that this is capable of repetition. Mr. Sharma is young, he's only 27, and he's already run for office twice before. Both of you all want to get this question resolved one way or another, do you not? Yes, Your Honor. So... That's often true when the parties want to agree about jurisdiction, right? Yes, Your Honor. Can you, when I look at page three, and I confess I just read it quickly, I don't see the may well run again on page three. Is there somewhere that I can look where he makes some indication that he's going to run again? Maybe we... I totally get the lead point. Maybe we can infer it from the fact that he's done it twice. But is there anywhere else other than page three of your brief that I can look to see this notion where he represents, either through lawyers or otherwise, that he has any intention to run again? To my knowledge, Your Honor, there's nowhere that's more concrete than as he may well run again. And then returning to my argument on the address disclosure rule, apologies... I'm sorry, he may well run again, and you say that is on page three of the brief? I believe so, Your Honor. I may just be missing it. I believe that it is page three, is it? Okay, I can look, that's okay. So apologies for any confusion on the candidacy form. I want to clarify that the challenge today is to the statute. It's a facial challenge to 163-8210C1. Now, the candidacy form is... Part of the challenge is... I just had a basic question of outstanding on this point because whether the challenge is just an as-applied challenge to him alone or whether it's a facial challenge sweeping in all voters, the chilling effect of it all seems to me to be so very speculative. I mean, I'm just not sure how listing addresses... I mean, we list addresses for everything. If you want some sort of benefit from the state, if you're filling out an insurance form, if you're going to a doctor's office or whatever, you want a driver's license, you're listing your address everywhere. And I just wasn't sure how such a common disclosure this is that we're forced to give. Every time we turn around in life, how does... I mean, the chilling effect is not here. It's not there. It is so far on the far, far horizon. I mean, what concrete... What non-speculative view can you offer about this chilling effect? Your Honor, I'll answer that if I may in two parts. So first, when it comes to the election context, the compelled disclosure of your address takes on a different level of concern than were you compelled to disclose your address in other contexts. It's clear that this address requirement applies to all voters. Yes, Your Honor. So that runs into the different problem of the fact that the injury may not be particularized. Yes, Your Honor. In this, as this is a First Amendment challenge, that chill can be and has been suffered by, well, can certainly be suffered by anyone who is being compelled to disclose their address as a voter or candidate, and it has been here. As Mr. Sharma himself has said, that he had a very bad feeling. We know that he experienced a chill as he thought about the amount of death threats and harassment and stalking that political candidates maybe are subjected to in today's political climate. So that is where the chill comes from for him. And the other point that I would make on that is that this court has found an objectively reasonable chill. At this point, I'm going to ask my fine colleagues if they have further questions. Judge Richardson, do you have some further questions? I don't, thank you. I want to thank you. And Mr. Corzine, thank you for bringing such able student counsel. And you should return to the law school and tell that community what a fine job they did. Thank you, Your Honor, for the opportunity. Thank you. Thank you both. And could you, my colleagues will shake hands with you. And I always tell counsel, if you're mad at me, you don't have to come up. But otherwise, I'd love to see you.
judges: J. Harvie Wilkinson III, Julius N. Richardson, Allison J. Rushing